UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEJANDRO OSORIO AMAYA,<br><br>Plaintiff,<br><br>v.<br><br>SENTRY CREDIT, INC.,<br><br>Defendant. | C24-0196 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Plaintiff's motion for partial summary judgment, docket no. 34, Plaintiff's motion to strike, docket no. 49, Defendant's motion for summary judgment, docket no. 36, and Defendant's motion to strike, docket no. 42. Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following order.

/ / /

/ / /

ORDER - 1

**Background**

In early August 2023, Plaintiff Alejandro Osario Amaya learned that Defendant Sentry Credit, Inc. had reported to three major credit bureaus that he owed approximately $14,000.00 in debt[1] related to a residential lease with Vista Property Management. First Amaya Decl. at ¶ 4, Ex. A (docket no. 34-1); *see also* Notice of Removal, Ex. 1 at ¶ 5 (docket no. 1-1) (hereafter "Compl."). Plaintiff was surprised to learn about this debt collection because he did not owe the debt assigned to him. First Amaya Decl. at ¶ 5, Ex. A (docket no. 34-1). On August 14, 2023, Plaintiff called Defendant's office and informed a representative that the assigned debt did not belong to him. *Id.* at ¶ 7. The representative asked him to electronically send to Defendant his identifying documents. *Id.* at ¶ 8. Wanting to keep his identifying information as private as possible, Plaintiff drove to Defendant's office that same day and provided the representative with forms of identification. *Id.* at ¶ 9. During the visit, Plaintiff was given the "Collection Letter," *see* First Amaya Decl., Ex. A (docket no. 34-1), which was assigned to "Alex Osario-Amaya Gomez," and in which a copy of a lease agreement signed by "Alex O. Gomez Amaya" was contained, *see* Dep. at 117:1–5 (docket no. 43). He was also provided the "Identity Theft Affidavit" for him to fill out, *see* First Amaya Decl., Ex. B (docket no. 34-1), which was addressed to "Alex Osario-Amaya Gomez," *see id.* Plaintiff was informed that the debt Defendant reported was "linked" to his name and social security number. *See* Compl. at ¶ 13 (docket no. 1-1).

---

[1] This debt had been reported in February 2023. *See* Compl. at ¶ 6 (docket no. 1-1).

ORDER - 2

1       Over the next month, Plaintiff had multiple calls with Defendant's representatives.
2 *See* First Mathis Decl., Ex. 1 (docket no. 36-2). He also spoke with the individual named
3 on the Collection Letter and Identity Theft Affidavit, *see* Dep. at 128:1–6 (docket no. 43),
4 and with Vista Property Management, *see id.* at 136:23. During one call with Defendant,
5 Plaintiff was told that the entry of the debt had been deleted from his credit report. First
6 Amaya Decl. at ¶ 19 (docket no. 34-1).

7       Plaintiff brings this lawsuit against Defendant for alleged violations of the Fair
8 Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, Washington's
9 Consumer Protection Act ("CPA"), Revised Code of Washington ("RCW") 19.86.090,
10 and the Washington Collection Agency Act ("WCAA"), RCW 19.16.250. *See* Compl.
11 (docket no. 1-1). Plaintiff initially filed this suit in King County Superior Court on
12 January 10, 2024, and on February 12, 2024, the case was removed to this Court. *See*
13 Notice of Removal (docket no. 1). On June 18, 2025, Plaintiff filed a motion for partial
14 summary judgment[2] ("Plaintiff's Summary Judgment Motion"), requesting the Court find
15 Defendant liable under the FDCPA, CPA, and WCAA. *See* Pl. Mot. (docket no. 34). On
16 June 20, 2025, Defendant filed a cross motion for summary judgment ("Defendant's
17 Summary Judgment Motion") as to all claims. *See* Def. Mot. (docket no. 36). In its reply
18 to its Summary Judgment Motion, Defendant moved to strike an exhibit included by
19 Plaintiff, *see* docket no. 42. Plaintiff filed a surreply, docket no. 49, in which he moved to
20 strike documents and arguments by Defendant.

---

[2] Plaintiff does not seek summary judgment on damages. *See* Pl. Mot. (docket no. 34).

ORDER - 3

**Discussion**

    A.       **Motions to Strike**

          **1.  Legal Standard**

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike under Rule 12(f) are disfavored and are infrequently granted. *Ocean Garden Products Inc. v. Blessings Inc.*, 2019 WL 396873, at *1 (D. Ariz. Jan. 29, 2019). "Requests to strike material contained in or attached to submission of opposing parties shall not be presented in a separate motion to strike, but shall instead be included in the responsive brief, and will be considered with the underlying motion." Local Civil Rule 7(g). The decision to strike said material rests solely in the court's discretion. *See Ski Lifts, Inc. v. Schaeffer Mfg. Co.*, 2020 WL 1128207, at *1 (W.D. Wash. Mar. 6, 2020) (citing *Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 7 (D.D.C. 2004)).

In this case, both Defendant's motion to strike and Plaintiff's motion to strike were properly brought under the Local Rules. The Court addresses both motions in turn.

          **2.  Defendant's Motion to Strike**

In its response to Plaintiff's Summary Judgment Motion, Defendant moves to strike Exhibit C of the First Amaya Declaration pursuant to Local Civil Rule 7(g). *See* Def. Resp. at 7–8 (docket no. 42). Exhibit C appears to depict a screenshot of an online

1   notification generated on September 3, 2023, that reads "SENTRY CREDIT INC" and
2   "The information you disputed has been verified as accurate[]." *See* First Amaya Decl.,
3   Ex. C (docket no. 34-1).
4       Because the Court did not rely on Exhibit C in resolving the cross motions for
5   summary judgment, Defendant's motion to strike, docket no. 42, is DENIED as MOOT.
6       **3.   Plaintiff's Motion to Strike**
7       Plaintiff's surreply, docket no. 49, is construed as a motion to strike. *See* Min. Ord.
8   (docket no. 50). Defendant responded, docket no. 51, and Plaintiff replied, docket no. 53.
9   In the Motion to Strike, Plaintiff requests the Court strike the copy of an alleged call
10  transcript between Plaintiff and a representative of Defendant, the copy of the collection
11  letter sent by Defendant on February 10, 2023, and any references to either document.
12  *See* Second Mathis Decl., Exs. 1 & 2 (docket no. 46). Plaintiff also requests the Court
13  strike Defendant's arguments related to the bona fide error defense under the FDCPA it
14  raised in its reply.
15      The Court GRANTS Plaintiff's Motion to Strike as to pages 10–13 of Exhibit 1
16  because they are a transcript of a call between an agent and a non-party. *See* Resp. at 7
17  (docket no. 51). As to the remaining pages of Exhibit 1 and all of Exhibit 2, the Court
18  DENIES the Motion to Strike as MOOT because it did not rely on these materials in
19  resolving the cross motions for summary judgment.
20      Plaintiff also moves to strike Defendant's bona fide error defense arguments raised
21  in its reply, docket no. 45, arguing that Defendant raised these particular arguments for
22  the first time in its reply and as a result, Plaintiff did not have an opportunity to respond
23

ORDER - 5

to them. In his Motion to Strike and reply, Plaintiff addressed Defendant's arguments. Accordingly, Plaintiff's Motion to Strike as to this request is DENIED as MOOT.

### B. Cross Motions for Summary Judgment

#### 1. Legal Standard

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006) ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

On cross motions for summary judgment, courts evaluate each motion independently, giving the nonmovant in each instance the benefit of all reasonable inferences. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016).

///

**2. The Fair Debt Collections Practices Act**

Congress enacted the FDCPA to protect consumers from abusive debt collection practices. 15 U.S.C. § 1692. The statute imposes strict liability on debt collectors, meaning violations do not have to be "knowing or intentional." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008). "A single violation of any provision of the Act is sufficient to establish civil liability under the FDCPA." *Williams v. Columbia Debt Recovery, LLC*, 579 F. Supp. 3d 1203, 1208 (W.D. Wash. 2022) (quoting *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997)). The FDCPA is a remedial statute construed liberally in favor of the consumer. *Tourgeman v. Collins Fin. Servs, Inc.*, 755 F.3d 1109, 1118 (9th Cir. 2014); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) ("[W]e wish to reinforce that the broad remedial purpose of the FDCPA is concerned primarily with the likely effect of various collection practices on the minds of unsophisticated debtors."). Whether a debt collector's conduct violates FDCPA "requires an objective analysis that considers whether the least sophisticated debtor would likely be misled by a communication." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (internal quotation marks omitted). Whether an FDCPA violation has occurred is a question of law. *Tourgeman*, 755 F.3d at 1119.

In this case, the parties do not dispute that Defendant is a debt collector under the FDCPA and that the debt Defendant sought to collect falls within the statute's purview. The parties do dispute, however, whether Defendant is liable under Sections 1692e & f. Section 1692e prohibits the use by a debt collector of "any false, deceptive, or misleading

ORDER - 7

representation or means in connection with the collection of any debt." *Donohue*, 592 F.3d at 1030. Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." *Id*.

### i. Section 1692e

Defendant admits that it erroneously attempted to collect on a debt it later discovered was not owed by Plaintiff. *See* Def. Mot. at 2 (docket no. 36) ("After Sentry was assigned the debt, but before Sentry became aware of the incorrect information associated with the debt, Sentry began attempting to collect on the debt."). Because a single violation can lead to liability under Section 1692e, the Court need not consider other sources of liability under this statute. *See Dawson v. Genesis Credit Mgmt., LLC*, 2017 WL 5668073, at *2 n.2 (W.D. Wash. Nov. 27, 2017).

The fact that Defendant reported a debt that was not Plaintiff's is sufficient to meet the materiality standard. Under the FDCPA, a misrepresentation is material if it could "cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." *Tourgeman*, 755 F.3d at 1121. A tradeline reporting that Plaintiff owed a debt is not a trivial misstatement but one that directly affects creditworthiness and could prompt a consumer to pay an invalid debt, refrain from seeking credit, or otherwise alter his financial decisions. The record also shows that Plaintiff actually expended time and effort investigating the debt, including repeated phone calls and an in-person visit to Defendant's office, underscoring that the misrepresentation influenced his conduct. Accordingly, factual disputes over whether Defendant continued reporting the debt after representing it would delete it, or whether it

ORDER - 8

1  "doubled down," *see* Pl. Mot. at 12 (docket no. 34), on its collection efforts in presenting
2  Plaintiff with the Collection Letter and the Identity Theft Affidavit are not material. The
3  initial false report coupled with the investigative burden it imposed is sufficient to
4  establish materiality under the FDCPA.

### ii. Section 1692f

Defendant argues Plaintiff cannot establish a violation of Section 1692f because he relies on the same facts as his Section 1692e claim, an approach that some courts in this circuit have rejected. *See* Def. Resp. at 11–12 (docket no. 42) (citing *Thomas v. Loomis-Therrien*, 2014 WL 5335913, at *6 (C.D. Cal. Oct. 20, 2014); *Muzyka v. Rash Curtis & Assocs.*, 2019 WL 2869114, at *7 (E.D. Cal. July 3, 2019)). Plaintiff disagrees and argues that some courts in this circuit have found that the same conduct by a debt collector that violated Section 1692e also violated Section 1692f. *See* Pl. Repl. at 7–8 (docket no. 48) (citing *Creager v. Columbia Debt Recovery*, 618 F. Supp. 3d 1094, 1103 (W.D. Wash. 2022); *Williams v. Columbia Debt Recovery*, LLC, 579 F. Supp. 3d 1203, 1211 (W.D. Wash. 2022); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 n.10 (9th Cir. 1994)).

The Court finds the authorities cited by Plaintiff to be persuasive. In this case, Plaintiff argues that Defendant violated Section 1692f(1), which prohibits a debt collector from collecting on any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Based on the undisputed facts, the Court agrees with Plaintiff that he has established a violation of Section 1692f(1) "for the same reason as Defendant's violations of Section[] 1692e."

ORDER - 9

*Creager*, 618 F. Supp. at 1103; *see also Clark*, 460 F.3d at 1177 ("Although we have never squarely addressed the issue of overlapping liability under the FDCPA, our prior cases leave us convinced that one action can give rise to multiple violations of the Act."). Accordingly, Defendant's attempt to collect the debt also constitutes a violation of Section 1692f(1) as a matter of law.

### 3. The Bona Fide Error Defense

Having found that Defendant's conduct constitutes violations of sections 1692e and f, the Court turns to whether Defendant is nonetheless protected by the bona fide error defense under 15 U.S.C. § 1692k(c).

To qualify for such defense, the defendant must prove that "(1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011). "The bona fide error defense is a 'narrow exception to strict liability under the FDCPA,' so defendants bear the burden of proof at summary judgment." *Engelen v. Erin Cap. Mgmt., LLC*, 544 F. App'x 707, 709 (9th Cir. 2013) (quoting *Clark*, 460 F.3d at 1177). The parties dispute only whether bona fide errors caused Defendant's violations and whether Defendant maintained procedures reasonably adapted to avoid such errors.

Defendant contends that any violation of the FDCPA resulted from a bona fide error because it relied in good faith on information from Vista Property Management, which incorrectly identified Plaintiff as a debtor. Defendant characterizes this reliance as a bona fide error under the second prong of Section 1692k(c), emphasizing that the

ORDER - 10

misreporting was not deliberate but stemmed from erroneous data provided by Vista. As to the third prong, Defendant maintains that it had procedures reasonably adapted to prevent such mistakes because its contract with Vista required Vista to covenant, represent, and warrant that all debts referred were valid and enforceable.

According to the Ninth Circuit, "[w]hen we spoke . . . of the nonliability of a debt collector who 'reasonably relies' on the reported debt, we were referring to a reliance on the basis of procedures maintained to avoid mistakes." *Reichert*, 531 F.3d at 1007. "To qualify for the bona fide error defense," the *Reichert* court explained, "the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors." *Id.* Indeed, Defendant would have to show that it "(1) actually employed or implemented the procedures; and (2) the procedures are reasonably adapted to avoid the specific errors at issue." *Frias v. Patenaude & Felix APC*, 2022 WL 136816, at *5 (W.D. Wash. Jan. 14, 2022) (citing *Reichert*, 531 F.3d at 1006). As the Ninth Circuit noted, "[i]f the bona fide error defense is to have any meaning in the context of the strict liability statute, then a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Reichert*, 531 F.3d at 1007 (quoting 15 U.S.C. § 1692k(c)).

Defendant fails as a matter of law to establish that it employed procedures reasonably adapted to avoid mistakenly listing Plaintiff as a debtor. Its reliance on Vista's contractual warranty that debts referred for collection were valid does not constitute a procedure under the FDCPA. *See Reichert*, 531 F.3d at 1006–07 (discussing *Wilhelm v.*

*Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008), in which the Eighth Circuit affirmed summary judgment for a debt collection agency that demonstrated employees had been instructed to segregate principal and interest to avoid "interest on interest" errors, and contrasting that showing with defendant National Credit Systems' reliance on a creditor's past accuracy and a manager's affidavit, which the Ninth Circuit held insufficient). Unlike the concrete safeguards in *Wilhelm*, Defendant here identifies no internal procedure designed to prevent the reporting of a debt not owed; rather, it attempts to outsource responsibility to the creditor. Accordingly, Defendant has failed to establish its bona fide error defense, and Plaintiff is entitled to summary judgment on his FDCPA claims as to liability.

### 4. The Washington Collection Agency Act and The Washington Consumer Protection Act

Plaintiff also asserts per se CPA claims[3] predicated on Defendant's alleged violation of the WCAA. A CPA claim requires a plaintiff to establish: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) which impacts the public interest, (4) an injury to the plaintiff's business or property, and (5) legal causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531, 533 (Wash. 1986). "When a violation of debt collection regulations occurs," including WCAA violations, such a violation "constitutes a per se violation of the CPA." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 53, 204

---

[3] Plaintiff has withdrawn any claim related to RCW 19.86.140 and the statutory penalty related to CPA claims. *See* Pl. Resp. at 14 (docket no. 41).

1  P.3d 885, 897 (Wash. 2009). If Plaintiff establishes such a per se CPA claim, the first

2  three prongs of the *Hangman* test are satisfied. *See Panag*, 204 P.3d at 897; *see also*

3  *Hangman*, 719 P.2d at 535–37.

4        Under RCW 19.16.250(21), a debt collector is prohibited from attempting to

5  collect "in addition to the principal amount of the claim any sum" other than statutorily

6  permitted interest, costs, or handling fees. Here, the parties do not dispute that Defendant

7  attempted to collect on a debt assigned to Plaintiff. *See* Def. Mot. at 2 (docket no. 36).

8  Defendant argues that the statute applies only to unauthorized add-ons to a valid principal

9  amount, and it states it did not apply any add-ons to the principal amount it was

10 attempting to collect. Plaintiff responds to this argument by pointing out that Defendant's

11 evidence shows that fees were added to the principal amount, and any attempt to collect a

12 debt Plaintiff did not owe violates the statute because the principal of his debt was zero.

13 *See* Pl. Resp. at 15–16 (docket no. 41); First Mathis Decl. at Ex. 2 at 25 (docket no. 36-

14 2); *see also* RCW 19.16.250(21).

15       The Court need not resolve this interpretative dispute because the undisputed

16 record shows that, even accepting Defendant's narrower reading, it sought to collect fees

17 in addition to the claimed principal. *See* First Mathis Decl., Ex. 2 at 25 (docket no. 36-2);

18 *see also* Amaya Decl., Ex. A (docket no. 41-1). Defendant has not identified any

19 statutory or contractual authority to explain the additional fees depicted in Exhibit 2 to

20 the principal debt. *See* First Mathis Decl., Ex. 2 at 25 (docket no. 36-2). The inclusion of

21 an unauthorized "collection fee" constitutes a violation of Section 250(21) as a matter of

ORDER - 13

1 law. As a result, the first three elements of the *Hangman Ridge* test are satisfied here. *See*
2 *Panag*, 204 P.3d at 897.

3    To establish injury, the injury need not be great, and monetary damages are not
4 required; unquantifiable damages may suffice. *Cousineau v. Microsoft Corp.*, 992 F.
5 Supp. 2d 1116, 1128 (W.D. Wash. 2012). Plaintiff points to the fuel costs he incurred
6 when driving to meet with counsel and to Defendant's office, and to the time he took off
7 from work to determine his legal rights and to drive to Defendant's office to provide
8 information. *See* First Amaya Decl. at ¶ 3 (docket no. 34-1); Flynn Decl. at Ex. 4 (docket
9 no. 36-1). Plaintiff also alleges emotional distress, including loss of sleep, stress, and
10 financial anxiety.

11    Defendant "is right that Plaintiff's feelings of anxiety, uncertainty, and distress are
12 not cognizable." *Frias*, 2022 WL 136816, at *7. The same is not so, however, for lost
13 time and expenses Plaintiff incurred in seeking legal counsel and responding to
14 Defendant's actions. *See, e.g.*, *id.* (finding time taken away from work and expenses
15 incurred in seeking legal counsel cognizable injuries); *see also Frias v. Asset Foreclosure*
16 *Servs., Inc.*, 181 Wash. 2d 412, 431, 334 P.3d 529, 538 (Wash. 2014) (citing *Panag*, 116
17 Wash. 2d at 55–57) ("Where a business demands payment not lawfully due, the
18 consumer can claim injury for expenses he or she incurred in responding, even if the
19 consumer did not remit the payment demanded."). Plaintiff thus established the injury
20 and causation elements and is entitled to summary judgment on his CPA and therefore
21 WCAA claims as a matter of law.

22

23

ORDER - 14

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff's motion for partial summary judgment, docket no. 34, is GRANTED, and Defendant's motion for summary judgment, docket no. 36, is DENIED[4].

(2) Defendant's motion to strike, docket no. 42, is DENIED as MOOT. Plaintiff's motion to strike, docket no. 49, is GRANTED in part and DENIED in part as MOOT.

(3) Plaintiff is DIRECTED to file, by September 12, 2025, an offer of proof of any actual and statutory damages in this matter.

(4) The current trial date, November 3, 2025, and all remaining deadlines are VACATED. The parties are DIRECTED to meet and confer and attempt to settle this case within 30 days of the entry of this Order. The parties are ORDERED to submit a joint status report addressing the status of the case on or before October 14, 2025.

(5) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 4th day of September, 2025.

---

[4] In Plaintiff's Complaint, he also asserted a claim under 15 U.S.C. § 1692d, *see* Compl. at 7 (docket no. 1-1), and requested injunctive relief under the CPA, RCW 19.86.090, *see id.* at 8–9. Neither party addressed either of these claims in their summary judgment briefing. *See* Mots. (docket nos. 34 & 36). The Court therefore does not address either claim in this Order.

Thomas S. Zilly
United States District Judge

ORDER - 16